UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| BACKCOUNTRY AGAINST DUMPS, THE PROTECT OUR COMMUNITIES FOUNDATION, EAST COUNTY COMMUNITY ACTION COALITION, and DONNA TISDALE,<br><br>      Plaintiffs,<br><br>  v.<br><br>JIM ABBOTT, in his official capacity as California State Director of the United States Bureau of Land Management, REN LOHOEFENER, in his official capacity as Pacific Southwest Regional Director of the United States Fish and Wildlife Service, KEN SALAZAR, in his official capacity as Secretary of the United States Department of the Interior, et al.,<br><br>      Defendants.<br><br>  and<br><br>SAN DIEGO GAS & ELECTRIC CO.,<br><br>      Intervenor-Defendant.<br>_____/ | NO. CIV. S-10-394 FCD/KJN<br><br>MEMORANDUM AND ORDER |

----oo0oo----

This matter is before the court on defendants' motion for transfer of venue pursuant to 28 U.S.C. § 1404(a).[1] Defendant-Intervenor San Diego Gas & Electric Company ("SDG&E") joins defendants' motion. (Docket #13.) Defendants do not challenge the propriety of venue in the Eastern District of California, but argue that the United States District Court for the Southern District of California is the more convenient forum. Plaintiffs oppose the motion arguing the balance of factors weigh heavily in their favor, meriting retention of the case in this district.

For the reasons set forth below, the court GRANTS defendants' motion. The court finds that there is little, if any, nexus between the claims alleged and the Eastern District of California. Instead, the complaint demonstrates that very substantial connections with the parties, the documents, the lands, and the resources at issue in the litigation exist with the Southern District of California. Accordingly, the court concludes that transferring the action to that court best serves the interests of justice.

**BACKGROUND**

This action concerns the Bureau of Land Management's ("BLM") approval of the Eastern San Diego County Resource Management Plan ("RMP"), along with an amendment to that plan, and approval of rights-of-way to construct and operate the Sunrise Powerlink Transmission Line Project ("Sunrise Project"), which is designed

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

to deliver electricity to the San Diego area from renewable energy sources generated in San Diego and Imperial Counties. The action also challenges the related United States Fish and Wildlife Service ("FWS") biological opinions. The Sunrise Powerlink will run approximately 120 miles from Imperial Valley to San Diego. (Compl., filed Feb. 16, 2010.)

Plaintiffs are three community organizations and one individual, all based in, and residents of, San Diego County. The named defendants are the United States Department of the Interior ("DOI"), two agencies within the DOI, the BLM, the FWS, and six DOI officials sued in their official capacity. On April 9, 2010, the court approved a stipulation executed by plaintiffs, defendants, and SDG&E and issued an order granting SDG&E's intervention as a defendant. (Docket #7.)

Plaintiffs contend that in adopting the RMP and approving rights-of-way for the Sunrise Project, DOI did not comply with several federal environmental statutes, including the National Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq.* (First and Fifth Claims for Relief), the Endangered Species Act, 16 U.S.C. §§ 1531-44 (Second and Seventh Claims for Relief), the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701-85 (Third, Fourth, and Sixth Claims for Relief), the National Historic Preservation Act, 16 U.S.C. §§ 470 *et seq.* (Eighth Claim for Relief), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (all Eight Claims for Relief). Plaintiffs request declaratory and injunctive relief with respect to these eight claims. Defendants filed an answer to the complaint on April 23, 2010. (Docket #11.) SDG&E answered the complaint on April 13,

1  2010.  (Docket #9.)
2     The principal agency officials at BLM and FWS who prepared
3  and approved many of the environmental documents at issue have
4  their offices located in El Centro and Carlsbad, California,
5  respectively, both within the Southern District.  Four of the
6  named DOI officials and all three of the named governmental
7  entities reside, for venue purposes, in Washington, D.C.  Only
8  the BLM State Director, defendant Jim Abbott, and defendant Ren
9  Lohoefener, the Regional Director of the FWS, reside in
10 Sacramento.  However, Lohoefener did not issue any decisions
11 challenged in this action.
12    Significantly, all of the land and resources at issues lie
13 exclusively in Imperial and San Diego Counties, both within the
14 Southern District.  Also, the majority of the documents to be
15 included in the administrative record, and which may be addressed
16 during court hearings in the case, are being complied from DOI
17 offices in the Southern District.

## STANDARD

19    Except as otherwise provided by law, a civil action against
20 an agency of the United States or an officer or employee of
21 the United States acting in his official capacity may be brought
22 "in any judicial district in which (1) a defendant in the action
23 resides, (2) a substantial part of the events or omissions giving
24 rise to the claim occurred or a substantial part of property that
25 is the subject of the action is situated, or (3) the plaintiff
26 resides if no real property is involved in the action."  28
27 U.S.C. § 1391(e).  Here, defendants concede that the Eastern
28 District qualifies as a forum with permissible venue for this

action because two named federal officials have their offices in Sacramento, California.  However, they move for a change of venue based on 28 U.S.C. § 1404(a).

Said statute provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In conducting an inquiry under Section 1404(a), the court examines whether the defendant seeking to transfer venue can "satisfy both of the following requirements: (1) the transferee district is one in which the action might have been brought originally; and (2) transfer will enhance the convenience of the parties and witnesses, and is in the interests of justice."  <u>Exact Identification Corp. v. Feldman Sherb & Co.</u>, No. Civ. S0502116 FCD/PAN, 2006 WL 236921, *1 (E.D. Cal. Jan. 31, 2006) (*citing* <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964)).

The United States Supreme Court has explained that the purpose of Section 1404 is to permit a case to be transferred, despite its initial forum, where it presents "issues and requires witnesses that make one District Court more convenient than the another."  <u>Continental Grain Co. v. Barge FBL-585</u>, 364 U.S. 19, 26 (1960).  The statute "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice."  <u>Van Dusen</u>, 376 U.S. at 616.  Ultimately, the decision whether to transfer venue under Section 1404(a) is committed to the sound discretion of the district court and should be exercised in light of all the circumstances

of a case. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). Whether venue should be transferred depends on "individualized, case-by-case consideration of convenience and fairness." Stewart Organization v. Ricoh Corp., 487 U.S. 22, 29 (1988) (*quoting* Van Dusen, 376 U.S. at 622). In rendering this decision, courts consider a range of public and private interest factors, including access to proof, calendar congestion, where the relevant events took place, and whether the action and potential outcomes have a localized impact. See e.g., Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).

**ANALYSIS**

As to the initial question, whether venue in the Southern District is proper, plaintiffs concede they could have filed this case in that district, either because plaintiffs reside there (28 U.S.C. § 1391(e)(3)) or because a substantial part of the events giving rise to plaintiffs' claims occurred in San Diego and the Project is located in San Diego (28 U.S.C. § 1391(e)(2)). Accordingly, the first requirement to permit transfer is met. Venue properly lies in the Southern District.

Transfer to that district, however, is not warranted unless the Southern District is more convenient to the parties and witnesses or a transfer is otherwise in the interests of justice. 28 U.S.C. § 1404(a). Typically, courts consider the convenience of the parties and potential witnesses in the first instance. Here, this inquiry is not particularly significant since the case, brought pursuant to the APA, will likely be determined exclusively on the administrative record. Nevertheless, it is

noteworthy that as alleged in the complaint, all four plaintiffs reside in San Diego County, and they specifically allege they use and enjoy the land and resources in San Diego and Imperial Counties where the Sunrise Project is located. (Compl., ¶s 14-17.) While plaintiffs are correct that the court must consider their choice of forum, where that forum is not plaintiffs' place of residence, no particular deference is given to plaintiffs' selection. See Decker Coal Co., 805 F.2d at 843 (holding that where a plaintiff's choice of forum is his place of residence, a defendant must make a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum"); Exact Identification Corp., 2006 WL 236921 at *2 ("[W]hile courts generally afford considerable weight to [a] plaintiff's choice of forums, the deference is considerably less where [the] plaintiff does not reside in the forum where the action was commenced."). Moreover, courts routinely recognize that a plaintiff's choice of forum is not entitled to deference where the chosen forum "'has no meaningful ties to the controversy and no particular interest in the parties or subject matter.'" Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 6 (D.C. Cir. 1996); accord CBD v. Kempthorne, No. C-07-0894 EDL, 2007 WL 2023515, *3 (N.D. Cal. July 12, 2007) (holding that deference to the plaintiff's chosen forum is not afforded where the connection between the plaintiffs, the controversy, and the chosen forum is attenuated).

Additionally, contrary to plaintiffs' protestations, it is not relevant where *counsel* is located--that plaintiffs' counsel is located in Oakland and defendants' counsel in Sacramento is not pertinent to the motion. What is relevant is whether it

would be more convenient to the *parties* and *potential witnesses* to have the case heard in the Southern District.

Clearly, since plaintiffs reside in San Diego, the Southern District is a convenient forum for them. Also, should testimony be required in the case, nearly all potential witnesses for either plaintiffs or defendants reside within the Southern District. Thus, while convenience to the parties and witnesses is not weighty factor in this case which will likely involve only an administrative record review, the factor does minimally support a transfer since the Southern District is a convenient location for plaintiffs and the vast majority of witnesses who reside in the district.

While convenience to the parties and witnesses may not heavily support transfer, transferring this action to the Southern District will best advance the interests of justice, taking into account the full range of public and private interest factors. In considering the second criterion under Section 1404(a), courts examine a variety of factors, including access to proof, calendar congestion, where the relevant events took place, and whether the action and potential outcomes have a localized impact. See e.g. Jones, 211 F.3d at 498; Heller Financial, Inc. v. Midway Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989) (holding that the "interests of justice," for purposes of Section 1404(a), includes such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with local law try the case).

Here, all land and real property related to the RMP for Eastern San Diego County and the transmission corridor for the

8

Sunrise Project are located entirely within the Southern District.  All environmental resources of concern similarly lie within the Southern District.  The residents of that district are most impacted by this controversy, including plaintiffs' claims related to use of McCain Valley and the habitat of ESA-listed species in San Diego County.  The Sunrise Project has been the subject of extensive public input and involvement in the Southern District over a more than three-year period of time, and public input is still being received today.  Between October 2005 and August 2008, the California Public Utilities Commission ("CPUC"), the BLM, and SDG&E conducted nearly 50 public meetings on the Sunrise Project in San Diego, involving tens of thousands of people in the Southern District.  As part of the environmental review process and public comment opportunities, the CPUC and BLM held, also in San Diego, 13 scoping meetings prior to the development of the Draft Environmental Impact Report/Environmental Impact Statement (EIR/EIS), 16 informational workshops and public hearings on the Draft EIR/EIS and Recirculated Draft EIR/Supplemental Draft EIS, and received thousands of public comments primarily from individuals, businesses and organizations located in San Diego and Imperial Counties.  Clearly, the interested public is located primarily in the Southern District.

   In contrast, the Eastern District has absolutely no impact on, nor any nexus with, any of the land or habitat at issue, a consideration that supports transfer.  See Sierra Club v. Flowers, 276 F. Supp. 2d 62, 67-68, 70-71 (D.D.C. 2003) (transferring case with NEPA claim to Florida where entire

ecosystem was located); <u>Airport Working Group of Orange Co. v. U.S. Dep't of Defense</u>, 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (transferring case with NEPA claim to Central District of California because military facility at issue was located there). Courts regularly find that localized controversies should be decided in the forum of greatest interest and impact. <u>Oil, Chem. & Atomic Workers Local Union No. 6-148, AFL-CIO v. N.L.R.B.</u>, 694 F.2d 1289, 1300 (D.C. Cir. 1982); <u>Citizen Advocates for Responsible Expansion v. Dole</u>, 561 F. Supp. 1238, 1240 (D.D.C. 1983) (finding that the interest of "justice requires that . . . localized controversies should be decided at home."). This principle has often been applied in environmental cases, to justify transfers of cases to the locality with the greatest interest in the project or where the greatest impact from the project exists. See e.g., <u>Environmental Defense v. U.S. Dep't of Transp.</u>, Civ. No. 06-2176 (GK), 2007 WL 1490478, * 4, 7 (D.D.C. May 18, 2007) (granting transfer to Maryland because dispute centered on highway on Maryland land and local interests most significantly affected); <u>Hawksbill Sea Turtle v. FEMA</u>, 939 F. Supp. 1 (D.D.C. 1996) (transferring challenge to housing project to the District of Virgin Islands where project, endangered species, and alleged violation of environmental laws occurred); <u>Northwest Forest Res. Council v. Babbitt</u>, Civ. No. 93-1579 JHG, 1994 WL 908586 (D.D.C. April 13, 1994) (transferring challenge to ESA listing of marbled murrelet to Washington where bird's habitat was located).

    These cases provide ample persuasive authority for this court to transfer this action to the Southern District as the

judicial district with the greatest connection to the citizens, the lands, the resources, and environmental interests impacted by the RMP for Eastern San Diego County and the proposed Sunrise Project.

Finally, the court remarks that judicial economy considerations further support a transfer of this case to the Southern District, which has a less congested docket than this district and significantly more federal judges.  The Eastern District court located in Sacramento has only 7 active judges who maintain a caseload of nearly 1100 cases per judge.  This is the highest caseload per judge in the country, exceeding by hundreds the national average of approximately 450 cases per judge.

In sum, the San Diego region's unique and overwhelming public interest in the Sunrise Project militates strongly in favor of transferring this matter to the Southern District where most interested parties reside.  This controversy arises entirely out of events that occurred in or will affect the land and residents of California's Southern District and epitomizes the principle that local matters of acute interest should be decided locally.

**CONCLUSION**

For the foregoing reasons, the court GRANTS defendants' motion to change venue, and HEREBY transfers the instant action to the United States District Court for the Southern District of California.  This case has very substantial links with the Southern District, and, in contrast, no meaningful connection with the Eastern District.  As such, on balance, the interests of justice favor transfer of this case to the Southern District,

1  where venue properly lies and where plaintiffs, as residents of
2  San Diego County, could have filed their complaint.
3       IT IS SO ORDERED.
4  DATED: June 8, 2010

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE